United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA JEAN T.,<br>    Plaintiff,<br>v.<br>ANDREW SAUL,<br>    Defendant. | Case No. 19-cv-07738-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 17, 18 |

Plaintiff Linda Jean T. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 17.] The Commissioner cross-moves to affirm. [Docket No. 18.] For the reasons stated below, the court grants in part and denies in part Plaintiff's motion and remands this matter for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on March 20, 2018, alleging her disability began on February 1, 2017. The application was initially denied on June 25, 2018 and again on reconsideration on August 28, 2018. Administrative Record ("A.R.") 200-208, 136-141, 145-150. She later amended the disability onset date to March 20, 2018. *See* A.R. 65. An Administrative Law Judge ("ALJ") held a hearing on May 16, 2019 and issued an unfavorable decision on June 10, 2019. A.R. 12-25. The ALJ determined that Plaintiff has the severe impairment of bipolar disorder. The ALJ found that Plaintiff retains the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must never climb ladders, ropes, and

> scaffolds, never work off unprotected heights, and never work around large, dangerous, moving machinery. She can do simple tasks, simple and 1-2 step tasks, simple repetitive tasks, and detailed tasks, but cannot do complex tasks. She can relate appropriately with the public occasionally, relate appropriately with coworkers frequently, and she has no limits relating appropriately with supervisors. She can respond appropriately to work pressures, sustain routine and regular attendance, and work a full day with only the usual breaks. She can regulate emotions, control behavior, and respond appropriately to work changes.

A.R. 19-20.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including Laundry Worker II, Furniture Cleaner, Remnant Sorter, and Laundry Worker, the ALJ concluded that Plaintiff is not disabled. A.R. 24-25.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II. ISSUES FOR REVIEW

1. Did the ALJ err in weighing the medical evidence?

2. Did the ALJ err in evaluating Plaintiff's credibility?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its

judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating the medical opinions about her mental health and in making a credibility determination.

### A. The ALJ's Consideration of Medical Opinion Evidence

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating

3

physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

The court has read and considered the entire medical record. For the purposes of brevity, the court cites only the facts that are relevant to its decision.

### 2. Analysis

#### a. Dr. Krishnan

Plaintiff argues that the ALJ erred by failing to provide "specific and legitimate" reasons for rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Brinda Krishnan, M.D. Pl.'s Mot. 9-11. The court disagrees.

The record contains treatment notes by Dr. Krishnan from January 2018 through July 2018. On March 5, 2018, after having treated Plaintiff for two months, Dr. Krishnan completed a Functional Assessment for Plaintiff. A.R. 647-648. She concluded that due to bipolar disorder and depression, Plaintiff is markedly limited in the following areas: the ability to maintain

4

attention for extended periods (two-hour segments or more); the ability to maintain regular attendance and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes. A.R. 647. She also opined that Plaintiff is moderately limited in other areas, including the abilities to remember work-like procedures, sustain an ordinary routine without special supervision, and work in coordination with or in proximity to others without being unduly distracted by them. A.R. 647-648. Dr. Krishnan noted Plaintiff's "poor mood, depression, [decreased] concentration/focus, anxiety," and intermittent suicidal ideation. A.R. 648.

The ALJ found Dr. Krishnan's opinion "unpersuasive" on the grounds that it was "unsupported by the record as a whole, and inconsistent with contemporaneous treatment notes," which he wrote "do not document mental status findings that would support the limitations in [Krishnan's] opinion." The ALJ also noted that Plaintiff's mental status examinations "are substantially normal," that "she has only required conservative care," and that "she has experienced symptom improvement with medication compliance." A.R. 22. These reasons are specific and legitimate.[1] *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes.").

Plaintiff argues that the ALJ erred because Plaintiff's "mental status examinations reflected specific deficits which were not normal" during the relevant time period. Pl.'s Mot. 10. However, all of the evidence she cites in support of her position post-date the period in which Dr. Krishnan treated Plaintiff. *See id.* (discussing treatment notes by other providers from September 2018-March 2019). Plaintiff does not point to any observations by Dr. Krishnan that support the

---

[1] Dr. Krishnan's opinion was contradicted by the opinion of medical expert Dr. Nathan R. Strahl, M.D., who opined that Plaintiff has only mild impairments. A.R. 76-80. Accordingly, the "specific and legitimate" standard applies, not the "clear and convincing" standard, which applies to uncontradicted opinions of treating physicians. *See Lester*, 81 F.3d at 830.

5

limitations she assessed; in fact, Dr. Krishnan's own notes consistently reflect mental status examinations that were largely within normal limits. *See* A.R. 362, 363, 365, 532, 535, 552, 568. Notably, psychiatrist Dr. Yujin Lee, M.D., who apparently began treating Plaintiff in August 2018, similarly regularly noted normal mental status examinations. *See* A.R. 661, 679, 688, 692, 700.

Plaintiff also disputes the ALJ's characterization of her treatment as "conservative" and notes that the "symptom improvement" referenced by the ALJ was a May 2017 treatment note, which preceded her March 2018 onset date. *See* A.R. 22 (citing 7F/25 or A.R. 602, noting that "Patient reports mood improvement since initiating Lithium 300 mg approximately 4-5 days ago"). These arguments largely boil down to a disagreement with the ALJ's characterization of the evidence. *See Jamerson*, 112 F.3d at 1066 (if the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision). However, even if the court disregarded the ALJ's observations about Plaintiff's "conservative" treatment and improvement with medication, it still concludes that the ALJ provided legally sufficient reasons to discount Dr. Krishnan's opinions.

### b. Model

Plaintiff next argues that the ALJ erred in discounting the opinions of her treating psychologist, Daniel R. Model.

Model began treating Plaintiff in April 2018. *See* A.R. 646. On August 30, 2018, he completed a "Mental Disorder Questionnaire Form." A.R. 642-646. Model wrote that Plaintiff "is able to keep appointments with this clinician without assistance. Her affect is integrated and her ADL's [activities of daily living] [are] good]." He noted that Plaintiff "presents with depressive symptoms" and "[m]anic symptoms inc[luding] pressured tangential speech and increased irritability." A.R. 642. However, Plaintiff "is alert and oriented, with no thought disturbance noted," and "doesn't exhibit any loss of contact w/reality." A.R 642-643.

With respect to her functioning, Model opined that Plaintiff "is able to navigate daily activities," but that her "pressured speech, that is at times tangential, can interfere w/social functioning." Additionally, he opined that Plaintiff "has difficulties with focus and attention that

6

may interfere with her task completion on the job" and that her mental health symptoms, including irritability and excessive self-criticism, "may negatively impact her relations with supervisors." A.R. 644-645. Her prognosis is "guarded." A.R. 646.

The ALJ concluded that Model's opinion was "unpersuasive," writing that "[l]ike Dr. Krishnan's opinion, [Model's] opinion is inconsistent with the objective medical evidence showing substantially normal mental status and the other evidence in the record as a whole such as the claimant's normal activities of daily livings[.]" A.R. 22 (citing A.R. 566). The ALJ also concluded that the opinion "appears equivocal and thus does not provide a meaningful function-by-function analysis of the claimant's work-related limitations." A.R. 22. These reasons are specific and legitimate. As discussed above, Plaintiff's providers regularly noted mental status examinations that were "normal" or appropriate, and virtually all of Model's own treatment notes included the observations that Plaintiff "present[ed] with clean, casual dress and good ADLs." *See, e.g.*, A.R. 566, 658, 663, 669, 670, 694, 695, 697. Even when describing Plaintiff's depressive or manic symptoms, Model also made observations such as Plaintiff "engages readily, with good focus," A.R. 671, is "alert and oriented, with good eye contact and exhibiting integrated affect," A.R. 658, is "polite and engaging," A.R. 669, and Plaintiff's "affect is integrated and she engages readily, with good eye contact." A.R. 664. The court also finds that the ALJ did not err in describing Model's opinion as equivocal; Model opined that Plaintiff's symptoms may limit her functioning in several areas, but did not translate those symptoms "into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

### c. State Agency Medical Consultants

Plaintiff also challenges the ALJ's treatment of the opinions of state agency medical consultants F. Mateus, M.D. and Joseph A. Shaver, Ed.D, who found Plaintiff moderately limited in several areas of functioning. *See* A.R. 115-116, 130-132. Pl.'s Mot. 12-13. The moderately limited areas of functioning included the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain attendance, and be punctual within customary tolerances; work in coordination with or in

7

proximity to others without being distracted; complete a normal workday and workweek without interruptions; interact appropriately with general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. A.R. 115-116. However, these consultants also concluded that Plaintiff "retains ability to sustain SGA doing at least simple, routine tasks with minimal contact with people." A.R. 116, 128, 131. A third consultant, Michael Bohnert, M.D., concluded that Plaintiff "retains the mental capacity to understand/remember simple and detailed instructions," but not complex instructions, and "retains the mental capacity to sustain the basic demands associated with relating adequately with supervisors and co-workers, but could not sustain these same demands in working routinely with the general public." A.R. 127.

The ALJ discussed these three opinions together, and found that the "mental residual functional capacity assessments are reasonable, well supported, and generally consistent with the record as a whole." However, he found that Plaintiff's "medications warrant precautionary limitations to never climbing ladders, ropes, and scaffolds and never working off unprotected heights or around large moving machinery"; therefore, he concluded, the opinions were only "partially persuasive." A.R. 23.

Plaintiff argues that the ALJ erred because "[t]he vast majority" of the limitations assessed by Dr. Mateus and Dr. Shaver were not reflected in the ALJ's RFC or hypothetical question to the VE, and that contrary to their opinions, the ALJ's RFC assessment found no limitations in her ability to relate to supervisors, respond appropriately to work pressures, sustain routine and regular attendance, work a full day with only the usual breaks, and respond appropriately to work changes. The RFC also stated that Plaintiff can "relate appropriately to coworkers frequently," despite Dr. Mateus and Dr. Shaver concluding that Plaintiff is moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. A.R. 19-20; A.R. 115-115; Pl.'s Mot. 13.

The court concludes that the ALJ erred with respect to the opinions of Dr. Mateus and Dr. Shaver. The RFC limitation to "simple tasks, simple and 1-2 step tasks, simple repetitive tasks,

8

and detailed tasks" adequately captures Plaintiff's moderate limitations in attention and concentration, as assessed by the consultants. *See Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir. 2009) (finding ALJ properly assessed medical evidence in determining that despite moderate difficulties as to concentration, persistence or pace, claimant could perform simple and repetitive tasks on consistent basis). However, the RFC does not address the other moderate limitations they assessed, such as Plaintiff's ability to get along with coworkers, accept instructions and respond appropriately to criticism from supervisors, maintain regular attendance, perform activities within a schedule, and complete a normal workday and workweek without interruptions from psychologically based symptoms. A.R. 115-116. *See, e.g., Morinskey v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011) (ALJ erred by failing to address physician's opinion that the claimant was moderately impaired in the ability to maintain regular attendance, sustain an ordinary routine, and complete a normal work day or workweek without interruption from bi-polar disorder; ALJ's restriction to "low stress" jobs did not encompass said limitations); *Raymond v. Berryhill*, No. 5:17-CV-01112-SHK, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) (restriction to unskilled work did not sufficiently account for "moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace"); *Wiles v. Berryhill*, No. 2:16-cv-09558-GJS, 2017 WL 5186333, at *3 (C.D. Cal. Nov. 8, 2017) (limitation to "simple routine tasks with limited public contact" did not account for moderate limitations "accepting instructions from supervisors and interacting with coworkers; performing work activities consistently without special instructions; maintaining regular attendance and completing a normal workday without interruption").

To the extent that the ALJ did not include all of the limitations Dr. Mateus and Dr. Shaver assessed in the RFC because he rejected those portions of their opinions, he erred because he failed to set forth any reasons for doing so. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

**B. The ALJ's Consideration of Plaintiff's Subjective Symptom Testimony**

**1. Legal Standard**

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is

malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but then discounted Plaintiff's subjective testimony because he found that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. A.R. 21. The ALJ did not identify any affirmative evidence of malingering. Accordingly, the ALJ was required to provide "specific, clear and convincing" reasons for discounting Plaintiff's testimony. *Vasquez*, 572 F.3d at 591.

The ALJ provided four reasons for discounting Plaintiff's testimony: 1) Plaintiff's "mental status examinations demonstrate substantially normal findings over the longitudinal record"; 2) Plaintiff's "symptoms and conditions have been treated conservatively with medications, counseling, and appointments with psychiatrists for medication management; 3) "the record shows inconsistent compliance with medications"; and 4) Plaintiff's "daily activities suggest she is capable of [the assessed] residual functional capacity." A.R. 21. The court finds that these are legally sufficient reasons to discount Plaintiff's testimony.

As to the first reason, the ALJ wrote that Plaintiff's mental status examinations do not support the degree of limitation alleged. The court finds that this is a specific, clear and convincing reason to discount Plaintiff's testimony; as discussed above, treatment notes by Dr. Krishnan, Dr. Lee, and Model consistently reflect mental status examinations that were largely within normal limits.

The second reason the ALJ offered to discount Plaintiff's testimony is that she has received "conservative" treatment, including medication, counseling, and medication management, "which do not support disabling limitations." The ALJ noted that there was no

11

evidence that Plaintiff had been hospitalized for her mental health conditions or subject to involuntary psychiatric holds, and that Plaintiff had not made any suicide attempts during the relevant period. A.R. 21. A claimant's relatively conservative treatment is a proper consideration in an ALJ's credibility determination. *Tommasetti,* 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir.2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."). The ALJ also noted that Plaintiff's symptoms stabilized and improved with treatment. A.R. 21. A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ noted that the record "reports stable and improved symptoms such as improved mood, energy, and less irritability, as well as improved organization and activities of daily living with treatment" and cited specific evidence supporting this statement. A.R. 21 (citing A.R. 507 (reporting improved mood with increased lithium dose); 525 ("states she feels better, feels calmer" with recent medication increase); 542 ("mood stable"); 602 ("Patient reports mood improvement since initiating Lithium 300 mg approximately 4-5 days ago. Less racing thoughts, less intrusive thoughts")). The court finds that this is a specific, clear and convincing reason to discount Plaintiff's testimony.

Next, the ALJ noted that the record shows "inconsistent compliance with medications." The record shows that Plaintiff regularly adjusted her medications on her own between appointments. *See, e.g.*, A.R. 323, 329, 365, 532, 535, 564, 637, 665 ("I'm not compliant with med."), 707 (Plaintiff is "receptive to the idea that [manic] symptoms may be a function of her not taking her psychotropic medications as prescribed (as noted in previous psychiatric notes)."). As the ALJ observed, Plaintiff's providers "repeatedly advised the claimant" not to do so. A.R. 21; *see, e.g.*, A.R. 362, 363, 364, 532, 535, 559, 703. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("the ALJ may consider . . . unexplained or inadequately explained failure to seek

12

treatment or to follow a prescribed course of treatment" in evaluating credibility).

Finally, the ALJ noted that Plaintiff's daily activities "suggest she is capable" of the assessed RFC, noting her ability to drive a car, shop in stores, exercise at a gym, manage her appointments with a calendar, and handle money, as well as activities of daily living within normal limits. The ALJ listed a number of other activities that Plaintiff reported performing. A.R. 21. He also noted that Plaintiff told a treatment provider in February 2017 that she "quit her job due to not having many hours," not due to medical reasons. A.R. 21-11; *see* A.R. 582. The Ninth Circuit has instructed that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). However, "the ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quotation omitted). While the ALJ did not make such findings here, he qualified his observations about Plaintiff's daily activities, noting that "such activities are not determinative of the ability to work" and instead "provide insight into the claimant's functioning and suggest a greater degree of function than alleged." A.R. 22. While this reason does not constitute a legally sufficient reason to discount her credibility, it supports the ALJ's overall credibility determination. The court finds no error.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: May 11, 2021



Donna M. Ryu
United States Magistrate Judge

13